to reserve. Great. And, you know, we'd like to keep we'd like to be done by three ish. But, you know, we want to give you a fair chance and say what you need to say. I want to point out that we've all read the briefs. We've all read the parts of the record that were implicated. And we're very familiar with the fix. Skip all that part, and just head right to your tough arguments. First, and move on from there. So Mr. Crow, if you'd like to start. Yes, once again, Pete scroll for the appellant Quinton Gates, may it please support in light of the Supreme Court's decision in Mayfield, I will be focusing on the second argument, the proportionate penalties argument. Mr. Quinton Gates should get a new sentencing hearing because both the trial court and trial counsel misunderstood the law with regard to the proportionate penalties clause and its applicability in this case. Now, as you know, the proportion of penalties clauses, all sentences must take into account the seriousness of the offense and have the objective of restoring the offender to useful citizenship. It is the second part that was not given proper consideration at the sentencing hearing because of this mass misapprehension of the law. The second argument is analyzed under an evolving standard of decency. And we now know that emerging adults like Quinton can use the proportion of penalties clause to make an as applied challenge to a de facto life sentence. The trial court here was considering the proportion of penalties clause, but then stated that it couldn't apply it because Quinton was prosecuted as a principal rather than an accomplice. Well, there is nothing in the proportion of penalties clause that limits it to accomplices. And the case law is clear that accomplice principals and accomplices can both argue that the proportion of their sentence violates the proportion of penalties clause. Okay, are you talking about the extra weapons charges? Well, yes, that is the big part of it. And that's where defense counsel when defense counsel was asked if it had to apply the firearm add ons, which in this case would make the minimum sentence 45 years, which is a de facto life sentence pursuant to buffer. Defense counsel reluctantly said, well, yes, you have to apply it. But the law is clear that a sentence that can advance applied challenge can find that the minimum sentence violates the proportion of penalties clause. So I think counsel not making that argument. Counsel, how do we have a de facto life sentence in this case? Well, because I think under buffer people be buffer 48 years would be de facto life sentence. And I'm assuming, I think you're probably referring to the parole sentence in this case, opportunity at parole, which I think is another mistake that the trial court made when it said, well, he's, he's going to get opportunity for parole 20 years. Why is this a de facto life sentence based on Elliott and Dorsey? Okay, I think that Elliott misunderstood Dorsey because Elliott said that, well, Dorsey dealt with the good conduct credit sentencing statute and said, well, this is not a de facto life sentence. Because when you get the good conduct credit, it will be under the 40 years under buffer. But if you look at what the Supreme Court in Dorsey said, as far as day for day credit goes, it's completely different than our parole statute. It says the prisoners entitled to day for day credit, it can only be taken away. If he disciplinary action revokes it, there are procedures in place to make sure that it is not arbitrarily revoked. And the prisoner has judicial review to Dorsey references parole in its decision as a reason why there would not be a de facto life sentence because you had a possibility of parole. Well, Dorsey deals with the good conduct credit statute. Right. But Dorsey always cite also cites with approval, parole. Well, I don't think that was a language. Are you disputing that? Would you like me to read to you what it says? Sure. I mean, I think that to the extent that that was a holding of that was that not applicable, that was being the holding of Dorsey related to good time credit. And I think the general idea of parole, especially the parole statute, that's an issue in this case, which is different than the parole statute that was in place for c number. There is, I think it's a mistake to say that this parole statute could change a sentence that violates a proportionate penalties clause to one that is constitutional because there is no judicial review of denial of parole. And so I think that's I ask you this question. If, if we consider the first district opinion, and Elliot to be good law, you lose, correct? Well, correct. I think the holding of Elliot, like I believe it relies on good time conduct credit. There's no way to justify your argument with Elliot. Well, I believe that my argument. I mean, I believe Elliot was wrongly decided. Correct. I understand what you said. I think Elliot looks to the good conduct credit statute, which like I said, is okay. I have one other question for you. Sure. And understand, I understand. And you know, you are doing a great job with the facts and law that you are dealt dealt in this case. What case are you relying on making your argument that, that this was a de facto life sentence. So you clearly think Elliot is bad law. I get that. But what's good law that you can direct our that says that this was, in fact, a de facto life sentence, regardless of the fact that he's eligible for parole in 20 years? Well, I, this is a very rapidly evolving area of the law. There's really hardly any question. Okay, I don't there's not a case right now. Because I don't if you go to like Westlaw and look up, there's really no cases that have applied the new parole statute yet. That will that I'm aware. I mean, Elliot, you know, are you asking us to ignore existing case law and make new law? Well, yes, Your Honor, I'm asking you to rule that if you look at the parole statute that is that Quentin will be subjected to, it is not provide a meaningful opportunity for release, at least not one that complies with the Illinois Constitution, the judiciary will be completely cut out of whether the sentence complies with due process. And, you know, this, like, for instance, the parole board is a political body appointed by the governor and approved by the legislature. The parole board could tell Mr. when he comes up in 20 years, I could tell Quentin, well, we don't believe young people can ever be rehabilitated. So we're going to deny parole. And if that were to happen, Quentin would have no recourse to the judiciary to finding. That's why I'm asking you to find that judges need to be the guardians of the proportionate penalty clause. And it cannot just, at least as a parole statute stands today, not just pawn it off on the parole board and say, Okay, I want you to explain something to me and Dorsey, the Supreme Court states, defendant argues that good conduct credit is not like parole because obeying prison rules does not demonstrate rehabilitation. We flatly reject that notion. How do you reconcile that with your argument? Well, I apologize, Your Honor, but I think that when Dorsey, the ultimate holding is not about parole, it's about good conduct credit. And like I said, if you look at Dorsey, they've laid out four reasons that the good conduct credit is something that you make really great arguments. You're obviously a very talented attorney. But I you know, from my perspective, what cases can I rely on and considering your argument in your position? Are there any? Well, at the moment, I would have to say that there probably isn't, but I would say you should look to the Constitution and look to the parole statute as it is stands right now, that applies to Quentin, not to the good conduct credit statute that was at issue in Dorsey. Like I said, Dorsey specifically notes that there are procedures in place to make sure that due process rights are protected, and there is the opportunity for judicial review. The parole statute that Quentin was talking about does not apply to judicial review. So an unconstitutional sentence is basically cutting out the judiciary from, and I think we do not want to cut out the judiciary from something as important as a proportionate penalties clause. Deployment is considered proportionate penalties, you know that he did. He said he couldn't apply it. I'm sorry, Your Honor. No, I just I just wanted to ask, I don't know, Justice Coghlan, or Mr. Scrow, the day for day credit that's decided by the Department of Corrections, and there's no judicial review of that either, is there? I believe according to Dorsey, if it's if it's improperly revoked, there is judicial review that that was, I think, on paragraph 61 of Dorsey, they went through the procedures that are in place for good for day credit, and they specifically mentioned as the fourth one may enforce constitutional protections through judicial review. Okay, so that's one of the fundamental differences between these two kinds of ways to get out early. And in the parole board example, the judicial review does not exist. And it's actually pretty limited, you have to wait another 10 years to try again. And then after that, oh, well, too bad. Yes, Your Honor, I think it's very, it's very limited. And I the judiciary should not be cut out of this process of imposing. So say the parole board was named by, I don't know, some future governor was a total nut. And he's decided to stack it with people who don't like people with blonde hair. And so if you're a person who's applying for parole, and you know, blonde hair, they just automatically say no go away. That would be unconstitutional, but you'd have no recourse. Exactly the problem. And I think there's even a much more real world problem besides your hypothetical example is it is a political body. And I've been for the parole board many times dealing with some pro bono work for sea numbers. And there are some people on it that just don't believe anyone should be paroled if they committed a serious violent offense. And I understand that. But I think that doesn't comply with our Constitution. Okay, but there you could say the same thing about some judges and some legislators and some congressmen and some senators and some governors and some mayors. And that's across the board that part of democracy is a mix of different philosophies and different very true looking at things. And ultimately, there's compromise. And that's how you wind up with an organized society. So that doesn't bother me quite as much as you would like it to. But what does bother me is the length of time somebody has to go back again, and then the cut too bad. And I do have to agree, I do tend to agree with you that this is 48 years is, is a is a very long time for a very young man. And the whole science of emerging adults is, is known. So who knows, who knows what what legislators actually were even aware of the emerging science, emerging adult science when they were talking about this bill, I haven't seen the transcripts of the committee hearings or the transcripts of the legislative debate on it. I would be curious about that. But you know, I think that we have anybody who's ever raised, certainly anybody who's ever raised a boy knows they're, they're not done yet at 18. They're not ready. So which is why I think the trial court could have and should have considered the proportionate penalties clause as applied to Quentin. I mean, you know, I know you've read the briefs, but I think Quentin was just barely past 18. And had had an unimaginably tragic childhood and he was embroiled in gang life. All of this happened while he was a child and none of it's his trial court did consider that. But it said that it could not consider the proportionate penalties clause because that's that is not accurate. He considered it exhaustively 1323 through and including 1334. But he then ultimately said, I can't consider the proportionate penalties clause because he was prosecuted as a principal, not an accomplice. So yes, there was a lot of talk about the proportionate penalties clause. But ultimately, the trial court decided that it wouldn't apply to Quentin because he was a principal. Okay, can you go back to the mandatory gun enhancement? You argue that the judges under Illinois law do have some discretion? Your Honor, I believe that the trial attorney said no, it's mandatory. Does that sum it up into sentences? That's a very good summation. And I believe that's one of the reasons the sentencing hearing was not sufficient. Because the proportionate penalties clause, it's a constitutional privilege provision that can override the statutory. And I think the case law is clear that the proportionate penalties clause allows a sentencing judge in some cases to say, as applied to this defendant, the statutory minimum should not apply. And I think that's why this is a very rapidly evolving area of case law. But at this time, they both you know, I think that counsel should have pointed out it's going back to Leon Miller, the statutory minimum can be inappropriate if it finds that the proportionate penalties clause would be violated. And I at the very least, I think the judge should have been able to consider whether the proportionate penalties clause could apply to Quinton. Doesn't the judge say in the record that he's going to consider it? He does. Yes, Your Honor. But then he ultimately says, but I can't apply it because he was a principal. Well, that's a reason why he's not going to do what he's not going to do. But that doesn't mean he didn't consider it. You can see that he considered it, right? Well, I guess there was definitely talk about the proportionate penalties clause. But it was all done under the can I believe that the record will show that it was done under the auspices of it doesn't apply to Quinton because he was a principal and also the proportionate penalties clause is not going to negate a mandatory minimum de facto life sentence. So in that regard, I don't think it was an adequate consideration of the proportionate penalties clause. And again, there is no case law in the state of Illinois that says that a judge has the discretion to not impose the mandatory statutory enhancement for using a gun in a murder under these factual circumstances for someone that is over the age of 18. Is there? Well, that the I believe that there's a lot of case law allowing at least in the post conviction to allowing the petitioners to make to make that argument, whether they're de facto life sentences, many, you know, mandatory de facto life. But I'm specifically referencing the enhancement. Well, I'm sorry, handsome, but 25 years for shooting someone with a gun. Well, I believe the principles is is already established by Leon Miller was statutory minimum for Leon Miller was life. And they said, I think I understand that. But what case should the lawyer have submitted or argued to the judge that he didn't do? Well, there's a plethora of cases where post conviction petitioners have been allowed to start making the case. Now, most of those cases have not worked their way through. But if it would never apply, there would have been no reason for most of these petitioners. Because the statutory minimum for most of these gun crimes is a de facto life sentence. So I understand your honor that I, you know, I mean, people v. Jones was a case where the direct appeal, they were remanded for resentencing. Now, that was a 50 year sentence, but I do believe that with a statutory minimum was 45. And, you know, I think the instructions were to consider the proportionate penalties clause. Yeah, unfortunately, as these as this case law develops, but I think the the principles are in the Constitution, and the principles are in the, you know, the Leon Miller, which is that this, these sentences can violate the proportionate penalties clause, these mandatory minimum de facto life sentences. Does that include for people over 18, more than 18? The line, right? Yes. I mean, if you look at the Supreme Court in Harris, that was a mandatory minimum sentence of life. And now Harris, of course, it hasn't, we haven't worked all the way through, but the Supreme Court said, go to the post conviction process and develop the record to show that as applied to you, the proportionate penalties clause shouldn't apply. And I think that the Supreme Court in Thompson and Harris and even in house, recognize that for emerging adults, the statutory minimum can be as applied violation of the proportionate penalties clause. Well, but I sort of got the feeling that they were only willing to go up to the age of 21. Not past that. So now he's under 21. So he'd still be under that. But when we talk about emerging adults in the science, we're really talking about people up to 2526 27, even in this particular case, we're talking about somebody 18 plus two months. So I think we always need to be very specific about how far Illinois has been willing to go so far. And we've only been willing to go as far as 1821 rather. And that's, that's important to me, because I don't want to see a whole bunch of 30 year olds now filing these petitions and saying, well, I'm an emerging adult. And I understand that your honor, of course, and you know, I mean, I probably know some 30 year olds that I would still think their brains maturing, but I get that there has to be lines. But I think in this case, Clinton was, you know, barely over 18. And I think he should have at least had a chance to make a proportionate penalties. challenge to his de facto life minimum de facto life sentence because of all the factors that are in the breeze. And I want to belabor them. But I don't think that we can say that he had a fair shot as a child. And all the things that happened to him as a child does not mean that he is someone who is beyond the chance of rehabilitation. And of course, I understand that the case law hasn't developed yet. But the proportion abilities clause is there for a reason. And it says, the goal is to restore to useful citizenship, and consider the seriousness of the crime. And this was a serious crime, we can never minimize the impact on the victims. I agree. It was a tragedy. It's a horrible crime. And I you know, I would not try to minimize it. But I also do think that the it is important to look at the rehabilitative potential of youthful offenders and not. I mean, it's the case law is clear that it is measured under an evolving standard of decency, similar to the Eighth Amendment. And I think that's why right now we don't have the case law because this is kind of new, but it's developing. And the evolving standard of decency says that we're not always going to take 18 year olds like Quinton, who weren't given much of a chance and say, we're just going to warehouse you until you're an old, old person. And, you know, the sentence needs to take that into account. And I believe it's a it's an old principle that is given new life as the science and case law develops. Mr. Scruggs, could you wrap it up, please? Sure, your honor, I just I believe that they both had misapprehensions of the trial court and trial counsel of how the law works. And in this case, the parole, the limited opportunity of parole should not negate the judge from considering a proportion as applied proportionate penalties challenge. Thank you. Any questions? Anybody else? Okay, then, Mr. Birch, it's your turn. Thank you. May peace the court. Gerard Richard Birch Jr. on behalf of the people of the state of Illinois. As for the second issue, this court's decision in Elliott established that defendant has already received the relief he asked his court for on appeal. That is a sentence that considered the Miller factors in mitigation and provided a meaningful opportunity for rehabilitation and to obtain release. To be clear, Miller versus Alabama specifically instructs us that the state is not required to guarantee defendants eventual freedom. However, a state must provide defendant with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. And keeping with that requirement, Elliott instructs us that under section 115 B, defendants eligibility for parole after serving at least 20 years of his 48 year sentence provided him with that meaningful opportunity for we can disagree with Elliot, right? Correct. Yes. Well, I mean, there was, you know, one case is out there. And as Castle's just said, and I assume you agree, this is the evolving area of the law. Yes. So there needs to be time for other courts to consider this issue. And whether Elliott was correctly decided or not, it's something that we need to consider in resolving this case, you would agree with that? Um, yes. But as I would also argue that as it stands right now, Elliot is dispositive on the issue. Well, well, so we can disagree with it. Because we could disagree with his example, Dorsey. What about the arguments that are made by Castle with regard to good conduct? And the differences in Dorsey in this case, with regards to procedures on the good, good conduct? Well, regarding those extra procedural safeguards in Dorsey, um, I think it's important to point out that the defendant in Dorsey was a fort was 14 years old, and even pursuant to Miller, and Miller even instructs us that, you know, juveniles are constitutionally different from adults as we have here. Therefore, I think this particular procedural safeguards that were in place in Dorsey, that defendant was even more entitled to those procedural safeguards, being the fact that he was a juvenile. Well, what about what about all the emerging adult science that we're seeing now? Well, um, we see, it clearly is in time for all the emerging adult science is in conflict with the parole act, and the way the paroles are handled for for people like Quentin. So they're, they're apples and oranges. They're really, you can't use one to argue the other. Well, I think with in regard to Dorsey, I think Dorsey, the Elliott court relied on Dorsey, and which was, it was correct, because, um, just a simple similarity between good conduct credit and parole. When you look at both of those, um, um, potentials, potential for relief, I mean, release, um, defendant in both of those situations is made aware of, you have to engage in to, to obtain that release. And it is incumbent upon defendant to perform his behavior to that particular set of circumstances to obtain relief. Under the day for day credit, if you get denied, if it gets rejected, rather revoked, you have some some way to deal with it, you can go to court and challenge it. Under a parole decision, that doesn't exist. So that's one thing that's not the same. Under the day for day credit thing. I'm not aware of anything that says, you know, if you if you lose all your day for day credits that you can't start getting them again, you've lost them forever. And but in the parole hearing matrix, you go up for parole, you go to the parole board, they say no, go away, come back in 10 years. And I don't think that that's that happens in the day for day credit. I mean, as you mature, yeah, you know, you go to prison, Illinois prison system, and you're 18 1920 and you cut it up and you're a tough guy. And you behave badly and you don't, you don't get any good day for day credit or you lose some of it. But that doesn't mean that by the time you're 30, you can't start getting it again. Is that a correct statement? As you mature, I'm not familiar with the particularities of the day for day credit statute, or okay, once I do not believe that once it's revoked, you can never ever collect more day for day credit. Okay, he takes away the stuff that you have to that point. But under the parole act, once they say no, the first time you have to wait 10 years to try again. And if they say no, again, you're out of there. That's it. You can't come back. And that to me is those factors are very significant to me. Um, well, in response to your concern, up until the time defendant is eligible for parole, there's no evidence to suggest that should had defendant shown maturity and rehabilitation, that the parole board would have arbitrarily denied his parole. Based on based on his behavior in prison, there's no evidence that they wouldn't have either. I'm sorry. There's no evidence that they would not have either. We don't know. Well, um, they're nobody's watching what they're doing. Nobody questions that nobody can challenge it. Well, well, as it stands today, today, I think the legislature has put the parole board in place to, um, um, engage in a certain function. And, um, the legislature has also, uh, actually mandated that, um, that the parole board actually considered a Miller factors in mitigation when, um, making this decision as to whether defendant will, um, achieve parole. Yeah. But if they do, they do or don't, he has no recourse. He or she defendant would have no recourse, right? I mean, the fact is that you're at the mercy of the parole board. That's correct. Isn't it? Yes. And, um, your honor, um, the fact is also that he's at the mercy of his own behavior in prison too. Um, as we stated, uh, not necessarily because, you know, prison, none of us have experienced that. And we can't, uh, even unless I can't, um, imagine what that is. It's a different existence and there are rules and, and, uh, very strict rules. It's a whole different arrangement. And it's not easy for any person to, to, uh, to, to, to never violate any of these rules that they have there. So, you know, any of us, anybody could at any time do something, uh, innocuous that we might think, and I, but, but I liked the rules. Uh, even here, there were some things that were very minor, but he was written up on. So, you know, again, uh, it isn't really in that person's control because anybody could report something that would be result in a write-up and what, what then the option does the defendant have? Right. Well, um, he, he, I don't think one write-up or a few write-ups would necessarily be indicative of not showing a potential for rehabilitation or maturity. That's what you think. We don't have any empirical evidence of that. I, with all due respect, Mr. Birch, that's your opinion. Correct. We don't have any, we have nothing to guide us on this. Well, and we know, we know for sure, because we see it every day that we live in a world where people make false accusations and it's almost impossible to prove a negative. So some guy says, this guy punched me. The guy says, no, I didn't. How do you prove you didn't? You know, really? So, uh, I think Justice Hyman's point is well taken. You don't have any control over that, especially in a prison environment where there are violent, nasty people. Well, um, maybe we should take that to the legislature and allow them to, um, put in some type of legislation that would, um, you know, prevent, um, meritless allegations against defendant from going forth and, um, and in consequence, uh, ruining his, his opportunity for rehabilitation and showing maturity. Um, that's the only recourse as it stands right now that, you know, I could see that could possibly prevent that or, um, find the, find the solution to your concern. Okay. Um, moving, moving forth. Um, it is, in other words, it is incumbent upon defendant to demonstrate to the parole board that he has fulfilled those two condition precedents in order to obtain release. Um, Elliott also correctly recognized that the states, excuse me, that the legislature's enactment of section 115 B seemed to be a remedial response to the constitutional issues recognized in Miller for both juveniles and young adults. As such, with the enactment of the statute, defendant received the benefits of the Miller protections, despite the fact that he was not a juvenile when he committed the offense and was not subjected to a de facto life sentence. Simply put this court and Elliott resolve the issue in the people's favor. I was like, I was 48 years, not a de facto life sentence. Well, if you look at, um, the definition of a de facto life sentence under, I'm sorry, it's 40, 40 years, 40 years. Um, a de facto life sentence under Reyes, um, is a term of years that is functionally equivalent to natural life without the possibility of parole. And here, the fact that defendant has the possibility of parole precludes him from having a de facto life sentence. Um, however, should this court accept defendants invitation to repudiate Elliott, defendant still cannot show that his sentence was so cruel, degrading or disproportionate to the offense as to shock the moral sense of the community. Um, unlike the defendant in Leon Miller, the 15 year old defendant in Leon Miller defendant here was the principal perpetrator and was not a juvenile when he committed the murder and was not subjected to a mandatory life sentence without the possibility of parole. And unlike Miller, the trial court could have indeed considered the Miller factors, the circumstances of the offense and the fact that section 115 B mandated that defendant receive a parole hearing after serving at least 20 years. After considering these facts, the trial court imposed a sentence that was 37 years below the 85 year maximum sentence. And in doing so, the court specifically stated that it imposed a 48 year sentence to allow defendant the opportunity to turn his life around. After all, one of the left time, I mean, 40, that's a long time, 48 years. And somebody who just a couple months after 40, a couple months, excuse me, over 18. The whole idea is that make 40 the outside for somebody of that age, because of the maturing mind. Is that is that kind of, you think that's what the legislature had in mind that somebody two months over that juvenile cut, cut off, should sit in prison for he'll tell you what 68 Oh, I'm sorry. Are you saying is the I mean, is that what the legislature did? They wanted the only possibility here was the parole board. That's your argument down into its essence is that the argument by his counsel should not be considered by us under Elliot. And essence, that's what you're saying. Correct. Correct. And what I'm saying is, I don't see where the legislature said that at all. And I don't think the legislature was reading the Constitution for their proportional penalty cause out of the Constitution or ignoring it in coming up with this with 115 B. Oh, I mean, it's the people's position that that was the legislature's remedial response to Miller is it related to young adult citizen because they draw the line at 18. And to 21. And that was their effort to recognize what Miller has instructed the courts in the states to do. Um, so if he if he is granted parole, he'll be out in 20. released. He has that option, right? Yes, Your Honor. Um, that's why it's not a de facto life sentence. Yes, Your Honor. Um, finally, defendants claim that counsel was ineffective for failing to challenge the imposition of the 25 year firearm enhancement is rebutted by the fact that Illinois courts have repeatedly upheld the constitutionality of the mandatory firearm enhancement statute when reviewing adult defendants decisions. If there are no further questions, for the reasons stated in our brief and our arguments stated here, presented here today, the people asked this court to affirm defendants conviction and sentence. Any other questions? Okay, fine. Mr. Sparrow, if you'd like to rebut for a few minutes, please. Um, I'll just be briefly, I understand, you know, counsel's reliance on Elliot, but I do think that this is a rapidly evolving area of case law. If you look at the Supreme Court precedent in Harris, house and Thompson, it clearly does say that emerging adults can make an as applied proportionate generally penalties challenge to the statutory minimum. That's what should have happened in this case. And I don't think because of the misapprehension of law, I don't think that was ever properly done. And I agree that the I'm glad that the legislature passes parole statute, but I don't think it's a substitute for the judge ensuring that the sentence is constitutional. And I don't think I think judiciary has to be the guardian of the proportionate penalties clause, and it cannot have a short circuited by a parole process where there are no due process rights and no appeal rights. So for those reasons, I just think that this sentencing hearing did not properly consider the proportionate penalties clause and as applied challenge for Quinton. And I think it should be remanded. So he has a chance to make that case. So that's, you know, I think we've gone over everything, I would say that, you know, yes, I don't have a case right now. But we're, we're, you know, these arguments are being made. And I think it's evolving. And the law is clear that the proportionate penalties clause is independent and can override statutory minimums. And so maybe I don't have the exact case right now. But the Constitution is there. And the precedent is in the case law that at least shows that this is possible. And I think Quinton is someone, if there was ever someone who should be able to make an as applied challenge, it was Quinton. And for all the reasons in my brief, I would hope that he gets a sentencing hearing where that is, is allowed. Thank you very much, gentlemen. We appreciate your wonderful briefs, your excellent oral argument. We've been looking forward to this discussion, because there is a little case law on it. And I will tell you that we're going to take this case under advisement and an order or an opinion will be issued forthwith. And with that, this court is adjourned.